Filed
09 December 7 A11:24
Aurora De La Garza
District Clerk
Cameron District

CAUSE NO. 2009-12-6671-D _Diana Gomez_

| | | |
|---|---|---|
| RICHARD GOMEZ | | IN THE 103rd JUDICIAL |
| Plaintiff | | |
| v. | | DISTRICT COURT |
| UNIVERSITY OF TEXAS AT BROWNSVILLE, TEXAS | | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

RICHARD GOMEZ, plaintiff, complains of THE UNIVERSITY OF TEXAS AT BROWNSVILLE, TEXAS (hereinafter referred to as the University or Defendant) and for cause of action shows:

### I.
### DISCOVERY CONTROL PLAN LEVEL

Discovery in this case is intended to be conducted under Texas Rule of Civil Procedure, Rule 190.3, Discovery Plan Level 2.

### II.
### PARTIES

1. Plaintiff is an individual residing in Cameron County, Texas.

2. Defendant, The University of Texas at Brownsville, is a corporate entity organized and existing under the laws of Texas, for the purpose of operating a state-supported institution of higher learning and may be served by serving its President Julieta Garcia at 80 Fort Brown, Brownsville, Texas 78520.

### III.
### VENUE

Venue is proper in Cameron County, Texas pursuant to Texas Civil Practice & Remedies Code Ann. 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to this cause of action occurred in Cameron County, Texas.

### IV.
### FACTS

1. On or about June 23, 2005, Plaintiff Dr. Richard Gómez, Jr. was offered employment as associate professor of Curriculum and Instruction by the University of Texas at Brownsville upon the condition that he relinquish his position as State Director of Bilingual Education and Migrant Programs in Olympia, Washington. Dr. Gómez was promised a four-year appointment, at the termination of which, he would have the opportunity to present, in front of a review committee, for a tenured position.

2. On or about July 6, 2005, Dr. Gómez, relying on the promise made by Dean Carl Stockton moved from Olympia, Washington to Brownsville, Texas.

3. Dr. Gómez relied on the good faith representations made by the university and its representatives and signed an Employment Contract. Under these terms, Plaintiff was hired as a tenure-track, associate professor under a continuing contractual relationship with the University.

4. Plaintiff's contract with the University required the parties to comply with the University Handbook of Operating Procedures (hereinafter referred to as "Procedures manual"). Thus, the provisions contained in the Procedures manual are part of plaintiff's contract with the University, as are the bylaws and governing regulations and policies of the School of Education.

5. Under the contract between plaintiff and the University, plaintiff was to be evaluated and considered for reappointment annually by the Curriculum and Instruction Personnel Committee, Curriculum and Instruction Department Chair, Dean of the School of Education, Provost, Dean, and others based on the following criteria: scholarship, student evaluations, and community service

6. Each year, Dr. Gómez engaged in a performance review with his immediate supervisors, and at no point did Defendant, through its agents, bring any cause of concern to the attention of Dr. Gómez. On the contrary, Dr. Gómez was consistently told that his research and student reviews were satisfactory and he was assured that he was progressing strongly towards a successful tenure application as promised as evidenced by strong positive comments made by the department chair who sat in on Dr. Gómez' class during his instruction.

7. Each year Dr. Gómez was reappointed to a subsequent year of employment and continued working competently and diligently serving as member of the Curriculum and Instruction academic leadership committee, coordinator of the Bilingual and English as a Second Language programs, and chairing several search committees for the University until his unexpected and unlawful termination.

8. The university investigated charges of sexual harassment against a university professor who falsely identified himself as being Dr. Gómez to the female he sexually harassed. The university till this day has not even informed Dr. Gómez of this investigation nor of its findings. The mishandling of this investigation has tainted Dr. Gómez' image and reputation among friends, colleagues, and potential employers.

9. On or about May 3, 2008, Plaintiff received a letter from Dr. Julieta Garcia, President of the University of Texas at Brownsville and Texas Southmost College informing Plaintiff that he was not reappointed for the following year. The letter gives no reason for termination of plaintiff's contract with the University. and is incorporated by reference. His last day of tenure-track employment was August 31, 2008. Significantly, this was four months short of Plaintiff being able to apply for tenure.

10. During the course of his employment, Dr. Gómez brought his concerns to the Director of the University doctoral program, the department chair, and Dean Carl Stockton. His concern of admitting students with no teaching credentials or teaching experience was, he believed, detrimental to the University, department, and the students.

11. In what amounts to a chilling of academic freedom, Dr. Gómez was ostracized for his objections to allowing unqualified individuals admission into the doctoral program.

12. The personnel committee which reviewed Dr. Gómez for reappointment was composed of individuals who had predetermined that Plaintiff was not to be reappointed. In fact, one individual traded committee assignments in order to become a member of the personnel committee for the sole purpose of destroying plaintiff's opportunity to seek tenure.

13. Dr. Gómez was 4 months short of being able to apply for tenure, when the committee, without cause, voted to decline the appointment of Dr. Gómez for an additional year.

14. The decision not to reappoint plaintiff was made despite the fact that plaintiff met and exceeded Defendant's criteria for the reappointment. Plaintiff was more qualified for reappointment than other tenure-track professors who were reappointed.

15. Upon receipt of the letter from Dr. Garcia of his non-reappointment, Dr. Gómez met with his immediate supervisor, interim Dean Gayle Brogdon, who advised Plaintiff that no reason

need be given for the non-reappointment of a faculty member, and that the decision to non-reappointment was not a grievable matter.

16. Plaintiff consulted the University Handbook on Operating Procedures and found, that while he could not file a grievance on the matter, the Manual did allow for him to construct a letter to the President of the University appealing the decision.

17. Plaintiff, following the guidelines from the Procedures manual, constructed said letter to the president of the university on June 20, 2008, alleging among other things breach of implied contract, lack of due process, and possible actions of discrimination against him.

18. On July 11, 2008 without interviewing the Plaintiff or discussing the issues he had raised as to his First Amendment rights, as well as his rights under Texas law, the president of the university denied his appeal.

19. Additionally, the Defendant has failed to properly follow its own procedures pursuant to the university Handbook on Operating Procedures. Specifically the Defendant has failed to promptly and timely notify the Plaintiff of any shortcomings in his performance.

20. But for Defendants actions, Plaintiff would have met all prerequisites for grant of tenure, and is entitled to the grant of tenure and promotion to associate professor with tenure.

## V.
## BREACH OF CONTRACT

21. Plaintiff incorporates the facts set forth above by reference. Defendant has breached its contract with Plaintiff as follows:

    a. Plaintiff has met all expressed conditions precedent as required under the Contract.

    b. Defendant did not re-appoint Plaintiff, thereby breaching its duties under the Contract expressing that Plaintiff was entitled to an additional year of re-appointment.

c. Defendant failed to adhere to its own procedures pursuant to the Policy manual incorporated into Plaintiff's contract.

## VI.
## BREACH OF PROMISE

22. Plaintiff incorporates the facts set forth above by reference.

23. Defendant expressly promised Plaintiff that he would be afforded the opportunity to apply for tenure. Defendant breached that promise when Defendant refused to reappoint Plaintiff four months before Plaintiff could begin the process of application for tenure review.

## VII.
## BREACH OF IMPLIED PROMISE

24. Plaintiff incorporates the facts set forth above by reference.

25. The de facto practice of the University is to automatically reappoint, absent exceptional circumstances, tenure track professors until those professors apply for tenure, at which time, a thorough and detailed review is conducted of the applicant's scholarship, student evaluations, and community service after which the professor is either granted tenure or has his or her employment terminated.

26. Each year, each reappointment was titled "year 3 of 7", "year 4 of 7" etc. reinforcing the implied promise of eventually securing a "year 7 of 7" reappointment barring a justified breech.

27. The University, through its practices, therefore, made an implied promise that Plaintiff would be afforded the opportunity to present for tenure and breached that promise by not reappointing Plaintiff for his fourth and final year of probation.

## VIII.
## PROMISSORY ESTOPPEL

28. Plaintiff incorporates the facts set forth above by reference.

29. Plaintiff would show that the Defendant promised that upon completion of seven years of tenure track work (four years at the University and three years credited from work at Texas Tech University) he would be given an opportunity to apply for a tenured position. The Plaintiff, in reliance on this promise, moved from the State of Washington to Brownsville, Texas.

30. The Defendant has failed to live up to its promise and Plaintiff should be awarded damages as a result of the failure by the Defendant to live up to its promise.

## IX.
## 1st AMENDMENT: FREE SPEECH

31. Plaintiff incorporates the facts set forth above by reference.

32. Plaintiff's conduct for which plaintiff's employment was terminated consisted of expressing concern over the admission of unqualified students into the only doctoral program at the University.

33. Plaintiff's exercise of free speech is a right rooted in academic freedom and protected by the First Amendment of the United States Constitution and the Texas Constitution, Article I, Section 8.

34. Accordingly, Plaintiff's termination violated Plaintiff's free speech rights and was not conduct for which Plaintiff's employment can be legally terminated.

## X.
## 14th AMENDMENT: DUE PROCESS

35. Plaintiff incorporates the facts set forth above by reference

36. In so dismissing Plaintiff, Defendant has failed to provide Plaintiff with due process of law under the Texas and United States Constitutions, as follows:

   a. Plaintiff has not been given adequate notice of Defendant's reasons for terminating Plaintiff's employment, despite repeated requests by Plaintiff.

   b. Plaintiff has not been advised of the names and the nature of the testimony of any adverse witnesses.

   c. Defendant has not given Plaintiff an opportunity to be heard, despite repeated requests by Plaintiff for a hearing and opportunity to be heard.

## XI.
### ATTORNEY'S FEES

37. As a result of Defendant's breaches of contractual duties and those arising by virtue of the United States and Texas Constitutions, Plaintiff has been compelled to engage the services of attorney Ruben R. Peña to represent Plaintiff in this matter, and has further agreed to pay said attorney a reasonable fee for his services. Plaintiff requests these attorney's fees and costs incurred in the prosecution of Plaintiff's underlying suit pursuant to Section 38.001(8) of the Texas Civil Practice and Remedies Code.

38. Plaintiff demands a jury on all of his claims and defenses.

## XII.
### PRAYER

As a result of Defendant's actions, Plaintiff has suffered loss of past and future income, and has suffered damages to his character and reputation in an amount in excess of the minimum jurisdictional limits of this court and would asks for compensatory and special damages, attorney's fees and costs of court. He further prays that the university be ordered to process his request for tenure.

Such other and further relief be granted to which plaintiff may be justly entitled.

Respectfully submitted,

**LAW OFFICES OF RUBEN R. PEÑA, P.C.**

BY: */S/ Ruben R. Pena*
   **RUBEN R. PEÑA**
   State Bar No. 15740900

Attorney for Plaintiff