# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RICHARD GOMEZ, | § | |
|     *Plaintiff*, | § | |
| | § | Civ. Action No. 1:10-CV-003 |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT | § | |
| BROWNSVILLE, | § | |
|     *Defendant*. | § | |

## DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING PLAINTIFF'S MOTION TO AMEND AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE ANDREW S. HANEN:

Defendant The University of Texas at Brownsville ("UTB") files this supplemental brief regarding Plaintiff's Motion for Leave to Amend (Dkt. # 26) and in further support of summary judgment, and would respectfully show the Court as follows:

### I. PROCEDURAL BACKGROUND

On March 4, 2011, the Court granted UTB's Motion to Dismiss and Motion for Summary Judgment, thereby dismissing Plaintiff's claims against UTB. (Dkt. # 31.) The Court deferred a decision on Plaintiff's Motion for Leave to Amend to allow for additional briefing. (Dkt. # 32.) Following additional briefing (Dkt. ## 33, 35), the Court held a hearing on June 8, 2011, during which it requested further briefing from the parties. (Dkt. # 37.) UTB files this brief in response to the Court's request. Rather than repeating prior arguments, this brief will refer to and incorporate by reference portions of UTB's prior briefs in support of its dispositive motion and in opposition to Plaintiff's motion to amend.

## II. ARGUMENT

A. <u>Plaintiff Has Not Shown Good Cause For Granting Leave To Amend.</u>

As an initial matter, Plaintiff has failed to offer any cause, much less good cause required by Rule 16(b), for his failure to timely amend his complaint before the deadline set by the Court.[1] At the June 8 hearing, Plaintiff's counsel again tried to blame the untimely amendment on UTB's purported failure to disclose its president, Dr. Juliet Garcia, as a witness.[2] However, UTB not only identified Dr. Garcia as a witness more than six months before Plaintiff sought leave to amend, but also asserted the affirmative defense in both its original and amended answers that it was "not the proper party to be sued" for Plaintiff's constitutional claims.[3] Furthermore, Plaintiff himself identified Dr. Garcia as the "chief offender" of his constitutional rights in his original petition and listed her as the first person he planned to depose in this case.[4] There is simply no basis to find "good cause" for Plaintiff's untimely amendment to assert claims against Dr. Garcia, and any attempt by Plaintiff to assert new claims should be barred on that basis alone.

B. <u>Plaintiff's Proposed Amendment Would Be Futile.</u>

Even if Plaintiff could justify his failure to timely amend (which he cannot), any amendment would be futile under Rule 15.[5] As an initial matter, Plaintiff's purported claim against Dr. Garcia in her official capacity for injunctive relief is futile on the merits. As a non-tenured faculty member, Plaintiff had no protected property interest in continued employment at UTB. Nor did Plaintiff have any property interest in the specific procedures set forth in UTB's handbook. And even if he did

---

[1] *See* Dkt. # 30, D.'s Resp. at 3-5; Dkt. # 35, D.'s Sur-reply at 1-3.

[2] Dkt. # 38, June 8 Tr. 24:17-19; *see also* Dkt. # 33, P.'s Resp. at 8-9.

[3] Dkt. #1-6, Orig. Answer at 1; Dkt. # 13, Am. Answer at 7.

[4] *See* Dkt. # 35, D.'s Sur-reply at 2.

[5] For a discussion of the law governing Rule 15 and the futility of amendment, see Dkt. # 30, D.'s Resp. at 6-7.

have a constitutionally-recognized interest, those procedures were followed, and Plaintiff received all the process he was due.

In addition, Plaintiff's claims against Dr. Garcia in her individual capacity are futile for two independent reasons. First, such claims are time-barred. Second, Dr. Garcia would be protected by official immunity from Plaintiff's claims.

i. <u>Plaintiff's Claim For Injunctive Relief Is Futile On The Merits.</u>

At the June 8 hearing, Plaintiff's counsel essentially admitted that Plaintiff no longer seeks damages, but rather, seeks an order requiring UTB to provide Plaintiff an administrative hearing to review his non-renewal pursuant to the UTB Handbook of Operating Procedures ("HOOP"), Section 7.7.2, Part B.2.[6] Under the limited exception to Eleventh Amendment immunity set forth in *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive relief (but not monetary damages) against state officials sued in their official capacity to end a continuing violation of federal law. *Id.* at 159-60. Moreover, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *American Bank and Trust Co. v. Dent*, 982 F.2d 917, 921 (5th Cir.1993) (quoting *Will v. Michigan State Dep't of Police*, 491 U.S. 58, 71 & n.10 (1989)).

Thus, if the Court finds good cause to grant Plaintiff leave to amend his complaint, Plaintiff may assert a claim for injunctive relief against Dr. Garcia in her official capacity under Section 1983. For purposes of Plaintiff's motion to amend, UTB does not challenge the timeliness of

---

[6] Dkt. # 38, June 8 Tr. 12:11-13:4, 19:19-23 ("at this juncture, we're not looking for any damages. We're looking for that administrative hearing"). Although neither Plaintiff's proposed amended complaint nor his original petition seeks such relief (Dkt. # 26-1, Prop. Am. Compl. at 12; Dkt. # 1-3, Orig. Pet. at 8), UTB recognizes that the Court has the power to grant such relief under Rule 54(c).

Plaintiff's claim for injunctive relief against Dr. Garcia in her official capacity.[7] However, Plaintiff's claim for injunctive relief is futile on the merits because Plaintiff's constitutional rights were never violated.

    a. <u>Plaintiff Has No Constitutional Right To A Hearing.</u>

As UTB has previously shown, Plaintiff's First Amendment rights were not violated, since Plaintiff's speech was not a matter of public concern and there is no evidence that his speech (rather than the merit of his work) motivated UTB's non-renewal decision.[8] Indeed, Plaintiff's counsel admitted during the June 8 hearing that Plaintiff's First Amendment claim is futile and that he is no longer asserting that claim.[9]

In addition, Plaintiff's due process claim fails as a matter of law.[10] "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 566-67 (1972).[11] It is black-letter law that "[a] non-tenured university employee has no property interest under the Fourteenth Amendment in continued government employment, and is therefore not entitled to constitutionally-mandated due process procedural safeguards upon the

---

[7] It is unclear whether an amendment asserting a claim against an official in their official capacity relates back to an original complaint against the employing agency under Rule 15. *Compare Messina v. Mazzeo*, 854 F.Supp. 116, 147 (E.D.N.Y. 1994) (holding amended claim against agency did not relate back to official capacity claims), *with Lamb v. Gregg*, 2006 WL 1462494, *4 (E.D. Tenn. May 23, 2006) (holding that amended official capacity claim relates back to claim against agency under state rule similar to Rule 15). However, it is clear that an amendment asserting Section 1983 claims against a state officer in her individual capacity does <u>not</u> relate back to the original pleading against the state agency. Thus, Plaintiff's individual-capacity claims against Dr. Garcia are time-barred. *See supra* at Section II.B.ii.

[8] Dkt. #19, D.'s Motion to Dismiss at 7-9; Dkt. #29, D.'s Reply at 2-4.

[9] Dkt. # 38, June 8 Tr. 23:24-24:5.

[10] For additional briefing on Plaintiff's due process claim, see Dkt. # 19, D.'s Motion to Dismiss at 9-11 and Dkt. # 29, D.'s Reply at 4-7.

[11] Plaintiff does not allege any violation of a liberty interest. *See* Dkt. # 19, D.'s Motion to Dismiss at 10 n.38. Moreover, he does not allege that any charges against him damaged his reputation or imposed a stigma, nor does he request a name-clearing hearing. *See Roth*, 408 U.S. at 573-75; *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983).

failure of the university to renew his contract at the end of its term." *Montgomery v. Boshears*, 698 F.2d 739, 742 (5th Cir. 1983) (citing *Roth*, 408 U.S. at 577).[12] This is especially true at a state university, such as UTB, with a formal tenure system, which "precludes a reasonable expectation of continued employment for non-tenured faculty." *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992) (quotations omitted).

Here, it is unquestioned that Plaintiff was a non-tenured faculty member working under a formal tenure system.[13] He therefore had no expectation of continued employment at UTB and no constitutionally-protected property interest in his employment that merited due process protection.

At the June 8 hearing, the Court raised the question of whether the UTB HOOP granted Plaintiff a property interest in the underlying procedures for an administrative hearing.[14] The answer to that question is "no" – the UTB HOOP does not provide Plaintiff a contractually-based property interest in an administrative hearing.

First, the United States Supreme Court has made it clear that an individual does not acquire a constitutionally-protected interest in specific procedures developed by the State.

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983). In *Roth*, the university had specific procedures providing a non-tenured professor a hearing at the university president's discretion (as does UTB in this case). 408 U.S. at 567 n.4 (Rule III allowed for hearing at discretion of president). Even with

---

[12] *See also Wells v. Doland*, 711 F.2d 670, 675-76 (5th Cir. 1983); *Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 552 (5th Cir. 1982); *La Verne v. Univ. of Tex.*, 611 F.Supp. 66, 69 (S.D. Tex. 1985).

[13] *See* Dkt. # 19, D.'s Motion to Dismiss at 3-4 (describing terms of Plaintiff's employment); Dkt. # 29, D.'s Reply at 6, citing Brogdon Aff. ¶ 13 (App. 48) & Exh. 9 (App. 68-69).

these procedures in place, the Supreme Court held that the plaintiff "did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." *Id.* at 578.

The Fifth Circuit likewise has held that a personnel manual setting forth procedures for termination of employment "does not necessarily create a property right." *Evans v. City of Dallas*, 861 F.2d 846, 849-850 (5th Cir. 1988). Rather, the *Evans* court held that "the requirement of valid reasons [for termination found in the personnel manual] merely establishes a procedure through which termination must be accomplished." *Id.* at 849.

Similarly, Texas courts have repeatedly recognized that the mere presence of a grievance or appeal procedure in an employee handbook does not give rise to a protected property interest.[15] *See Guinn v. Bosque County*, 58 S.W.3d 194, 201 (Tex. App.–Waco 2001, rev. denied) ("the mere fact that an employee handbook grants certain 'rights' to employees does not necessarily equate to the creation of substantive property rights or an alteration of the traditional at-will status."); *Haynes v. City of Beaumont*, 35 S.W.3d 166, 179-80 (Tex. App.–Texarkana 2000, no pet.) (existence of grievance procedures alone does not create substantive property rights or alter an employee's at-will status); *Byars v. City of Austin*, 910 S.W.2d 520, 524 (Tex. App.–Austin 1995, writ denied) (concluding that city charter and personnel policy manual outlining grievance procedures did not create protected property interest in continued public employment); *see also Jackson v. Tex. Southern*, 231 S.W.3d 437, 440 (Tex. App.–Houston 2007) (holding that dismissed student had no substantive interest in university's Rules and Regulations governing dismissal). Not surprisingly, the Fifth Circuit has specifically held that under Texas law, "employee handbooks or manuals,

---

[14] Dkt. # 38, June 8 Tr. 13:24-14:1.

[15] As the Supreme Court stated in *Roth*, property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law …." 408 U.S. at 577.

standing alone, constitute no more than general guidelines, absent express reciprocal agreements addressing discharge protocols." *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir.1992); *see also Miller v. Bunce*, 60 F.Supp.2d 620, 624 (S.D. Tex. 1999) ("a university's faculty handbook does not generally create a property interest in the continued employment of a professor or his promotion to tenure after successfully serving his probationary term.").

Courts have recognized such an interest in continued employment only in limited circumstances, such as when a university has a *de facto* tenure system or when a state agency has an express employment policy that requires termination of an employee be "for cause." *See, e.g., Perry v. Sindermann*, 408 U.S. 593, 603 (1972) (*de facto* tenure without formal process); *County of Dallas v. Wiland*, 216 S.W.3d 344, 353-54 (Tex. 2007) (finding procedures governing termination insufficient and relying on limits to termination only for cause). In this case, neither situation exists, so there is no basis to find that Plaintiff has a constitutionally-protected interest to an administrative hearing.

Rather, the UT System Board of Regents' *Rules and Regulations* (the "Regents' Rules") and the UTB HOOP, both of which were referenced in Plaintiff's employment memorandum of appointment,[16] preclude any expectation of continued employment or unfettered right to an administrative hearing. First, and most clearly, the Regents' Rules expressly state: "No nontenured member of the faculty shall expect continued employment beyond the period of his or her current appointment."[17] Moreover, both the Regents' Rules and the HOOP inform non-tenured faculty that no reason is required to be provided for the non-renewal of annual appointments.[18] In addition, the

---

[16] Dkt. # 20-1, Gomez Depo. Exh. 16 (App. 27).

[17] Dkt. # 39-1, Felkel Aff. Exh. 1 Regents' Rules 31002 Sec. 3. This specific provision was also referenced in Plaintiff's non-renewal letter. Dkt. # 20-1, Gomez Depo. Exh. 18 (App. 29).

[18] Dkt. # 39-1, Felkel Aff. Exh. 2 Regents' Rules 31008 Sec. 6; Dkt. # 39-2, Brogdon Aff. Exh. 1 UTB HOOP § 7.7.2 Part 2.

Regents' Rules make clear that non-tenured professors do not have an automatic right to a hearing on request, but only at the discretion of the University president.[19] In short, the Regents' Rules and the HOOP simply do not give rise to a constitutionally-protected interest to an administrative hearing.

Not surprisingly, Plaintiffs have failed to cite to a single case holding that a non-tenured faculty member in a university with a formal tenure system has the right to an administrative hearing upon non-renewal of his appointment. Furthermore, UTB's counsel is unaware of a single case holding that, under Texas law, a non-tenured faculty has a constitutionally-protected property interest in an administrative hearing solely because the university's president has the discretion to provide a hearing under certain circumstances. In short, there is nothing to suggest that Plaintiff has any continued expectation of employment or any constitutionally-protected right to an administrative hearing.

      b. <u>Plaintiff Was Given All The Process He Was Due.</u>

Plaintiff's amendment is futile for the additional reason that, even assuming Plaintiff had a constitutionally-protected interest to the procedures set forth in the HOOP, he was not deprived of that right without due process.

Plaintiff will likely argue (as his counsel did at the hearing)[20] that Section 7.7.2 of the HOOP, read by itself, divests the President of her discretion to grant a hearing and automatically entitles a non-tenured faculty member to a hearing once a written request is submitted. However, both Texas law and the HOOP make clear that the power to govern the institutions of the University of Texas System is vested in the Board of Regents and that the Regents' Rules govern. The Texas Legislature, which is given the duty and authority to provide for the maintenance, support, and

---

[19] Dkt. # 39-1, Felkel Aff. Exh. 2 Regent's Rules 31008 Sec. 6.

direction of The University of Texas by Article VII, Section 10 of the Texas Constitution, has delegated the power and authority to administer The University of Texas System to the Board of Regents. TEX. EDUC. CODE § 65.11 et seq. Texas courts have held that the Board of Regents has wide discretion in exercising this power and authority and that the rules adopted by the Board have the same force as statutes. *See James v. Wall*, 783 S.W.2d 615, 619 (Tex. App.–Houston [14th Dist.] 1989, no pet.) (citing *Foley v. Benedict*, 55 S.W.2d 805, 807 (Tex. Comm'n App.1932)).

The HOOP explicitly recognizes the role of the Regents' Rules and makes clear that the policies in the HOOP are additive to the Regents' Rules: "In addition to the policies included in the [Regents Rules], the Board of Regents has also authorized the University to adopt policies, procedures, rules and regulations published in the [HOOP]."[21] Moreover, HOOP Section 5.1.1 states that, to the extent there is any conflict, the Regents' Rules govern, such that "any rule or regulation in [UTB'S HOOP] that is in conflict with any rule or regulation in the Regents' Rules and Regulations, is null and void and has no effect."[22] Thus, it is clear that the HOOP must be interpreted in light of and in accordance with the Regents' Rules.

In this case, the Regents' Rules make clear that the decision to grant an administrative hearing to review the non-renewal of a non-tenured faculty member lies in the discretion of the university president.[23] Regents' Rule 31008, Section 6 and HOOP Section 7.7.2, Part B both require that a non-tenured faculty member who seeks an administrative review must first make a written request for a hearing to the president and set forth in detail the facts that prove the non-renewal

---

[20] Dkt. # 38, June 8 Tr. 9:21-10:11.

[21] Dkt. # 39-2, Brogdon Aff. Exh. 4 UTB HOOP § 10.1.2 Part B. *See also* Dkt. # 39-2, Brogdon Aff. Exh. 3 UTB HOOP § 10.1.1 Part C ("The Office of the President maintains the official institutional copy of the Board of Regents' Rules and Regulations of The University of Texas System for the governance and administration of The University of Texas System and its institutions.").

[22] Dkt. # 39-2, Brogdon Aff. Exh. 5 UTB HOOP § 5.1.1 Part C.2.i.

[23] Dkt. # 39-1, Felkel Aff. Exh. 2 Regents' Rules 31008 Sec. 6.

decision was made for unlawful reasons.[24] In addition, Regents' Rule 31008, Section 6 states: "*If the president determines* that the alleged facts, if proven by credible evidence, support a conclusion that the decision was made for unlawful reasons, such allegations shall be heard by a hearing tribunal …."[25] Likewise, HOOP Section 7.7.2 states that "[t]he administration of the University need not state the reasons for the questioned decision or offer evidence in support thereof unless the affected faculty member presents credible evidence that, if unchallenged, proves the decision was made for unlawful reasons."[26] These provisions, when read together and in light of the conflict resolution provision in HOOP Section 5.1.1, make it clear that UTB's president must first determine if the faculty member has presented credible evidence that the non-renewal was for unlawful reasons and then, if she finds that such evidence has been presented, grant a hearing.[27]

In this case, it is clear that Dr. Garcia followed these procedures in denying Plaintiff an administrative hearing. Dr. Garcia determined that Plaintiff's written request (along with the supplemental information solicited by Dr. Garcia) did not present credible evidence that the decision not to renew his appointment was unlawful.[28] Dr. Garcia therefore denied Plaintiff a hearing pursuant to Regents' Rule 31008 Section 6 and UTB HOOP Section 7.7.2.[29] Thus, even if Plaintiff

---

[24] Dkt. # 39-1, Felkel Aff. Exh. 2 Regents' Rules 31008 Sec. 6; Dkt. # 39-2, Brogdon Aff. Exh. 1 UTB HOOP § 7.7.2 Part 2 (App. 65-66).

[25] Dkt. # 39-1, Felkel Aff. Exh. 2 Regents' Rules 31008 Sec. 6 (emphasis added).

[26] Dkt. # 39-2, Brogdon Aff. Exh. 1 UTB HOOP § 7.7.2 Part B.2.b. Note that, should a hearing be held, it is governed by the procedures as in the case of dismissal for cause set forth in Section 7.7.3.C, subject to certain exceptions set forth in Section 7.7.2.B.2.b. Section 7.7.3 is provided for the Court's reference. Dkt. # 39-2, Brogdon Aff. Exh. 2 UTB HOOP § 7.7.3.

[27] Even if Regents' Rule 31008 and HOOP Section 7.7.2 are read to be inconsistent, the HOOP is clear that Regents' Rule 31008 governs and HOOP Section 7.7.2 "is null and void and has no effect." Dkt. # 39-2, Brogdon Aff. Exh. 5 UTB HOOP § 5.1.1 Part C.2.i.

[28] Dkt. # 20-1, Gomez Depo. Exhs. 19 (5/5/08 Gomez letter, [App. 31-32]), 20 (5/19/08 Garcia letter, [App. 34] ), 22 (6/20/08 Gomez letter, [App. 36-39]), 23 (7/11/08 Garcia letter [App. 41]).

[29] Dkt. # 20-1, Gomez Depo. Exh. 23 (7/11/08 Garcia letter [App. 41]).

had a constitutionally-protected interest in those procedures, he received all the process he was due.[30]

The Fifth Circuit's ruling in *Hillis v. Stephen F. Austin State University*, 665 F.2d 547 (5th Cir. 1982), is instructive. In that case, the Fifth Circuit reiterated that "[a] nontenured professor has no constitutional right to a hearing absent a protected property interest or liberty interest." *Id.* at 552. The Court then recognized that, under the university's faculty handbook, the decision of whether to grant Hillis a hearing was "left to the discretion of a faculty committee." *Id.* The Court further determined that the procedure in the handbook was followed since the faculty committee performed a preliminary review of Hillis's claims and determined that his academic freedom had not been violated – thus, "a full hearing before the Faculty Senate was not held." *Id.* As a result, the Court held that "[t]he procedural rights Hillis received were constitutionally sufficient." *Id.*

So too is the case here. Dr. Garcia's decision was in accordance with the Regents' Rules and the UTB HOOP. There is no basis to conclude that Plaintiff was entitled to any more process than he received.

ii. <u>Plaintiff's Individual-Capacity Claims Against Dr. Garcia Are Time-Barred.</u>

Not only are Plaintiff's claims for injunctive relief futile, but Plaintiff's proposed Section 1983 claims against Dr. Garcia in her individual capacity are also futile because they are untimely. It is of note that Plaintiff's counsel suggested that Plaintiff is no longer asserting claims for damages,

---

[30] Furthermore, even if Plaintiff was denied a constitutionally-protected interest, he received the requisite due process protection. The Supreme Court has explained that "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). Plaintiff was given a meaningful opportunity to be heard, as he presented his case to the President in writing and was afforded an opportunity to provide supplemental evidence. (Dkt. # 20-1, Gomez Depo 174:13-24, 177:8-179:14 (App. 12,13) & Exhs. 19 (5/5/08 Gomez letter, [App. 31-32]), 20 (5/19/08 Garcia letter, [App. 34] ), 22 (6/20/08 Gomez letter, [App. 36-39]).) In addition, Plaintiff filed a grievance with the then-Vice President for Academic Affairs, Dr. Charles Dameron, who met with Plaintiff on numerous occasions, investigated the grievance and concluded that the evidence did not support Plaintiff's claims. (Gomez Depo 188:20-191:6 (App. 15-16) & Exhs. 25 (5/26/09 Gomez letter, [App. 44-45]); Dameron Aff. ¶¶ 5-7 (App. 72) & Exhs. 4

[31] which would imply he is no longer asserting claims against Dr. Garcia in her individual capacity under Section 1983.

In any event, and as stated in UTB's prior briefing,[32] the Section 1983 claims against Dr. Garcia in her individual capacity are subject to a two-year statute of limitations that ran long before Plaintiff's pleading. Furthermore, Plaintiff's proposed amended complaint does not relate back to the filing of his original petition under Rule 15(c)(1)(C). UTB has supplied ample authority from the Fifth Circuit establishing that such an amendment does not relate back,[33] and Plaintiff has not provided any authority to the contrary.

      iii.      <u>Plaintiff Fails To Allege Plausible Facts To Defeat Dr. Garcia's Qualified Immunity.</u>

As discussed in UTB's prior briefing, Plaintiff's claims against Dr. Garcia in her individual capacity are also futile because Plaintiff has not alleged plausible facts to defeat Dr. Garcia's qualified immunity.[34] Furthermore, given the lack of clear case law supporting Plaintiff's purported constitutionally-protected right to an administrative hearing, there is no basis to conclude that Dr. Garcia violated some "clearly established law" when she denied Plaintiff's request for a hearing.

---

(9/24/09 Dameron letter and report [ App. 81-84]).) The procedure afforded Plaintiff was more than constitutionally sufficient.

[31] Dkt. # 38, June 8 Tr. 19:19-23.

[32] Dkt. # 30, D.'s Resp. at 7-10; Dkt. # 35, D.'s Sur-reply at 3-5.

[33] Dkt. # 30, D.'s Resp. at 10.

[34] Dkt. # 30, D.'s Resp. at 10-12; Dkt. # 35, D.'s Sur-reply at 5-6. To the extent Plaintiff is asserting a state-law based promissory estoppels claim against Dr. Garcia, that claims is also futile because Dr. Garcia is protected by official immunity. Dkt. # 30, D.'s Resp. at 12-13; Dkt. # 35, D.'s Sur-reply at 6-7.

## III. CONCLUSION

For the foregoing reasons and for the reasons stated in Defendant's prior briefing (as incorporated by reference herein), Defendant UTB respectfully requests that this Court deny Plaintiff's motion for leave to amend, order that Plaintiff take nothing by his action, and award Defendant such further relief to which it is entitled, including costs and attorney's fees.

Dated: June 29, 2011

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

/s/ Darren G. Gibson
**DARREN G. GIBSON**
Attorney-In-Charge
Texas Bar No. 24068846
Southern District No. 1041236
Assistant Attorney General
Office of the Attorney General
General Litigation Division-019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX
Darren.Gibson@oag.state.tx.us

***ATTORNEYS FOR DEFENDANT UNIVERSITY OF TEXAS AT BROWNSVILLE***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of foregoing document was served via the CM/ECF system on June 29, 2011, to:

Ruben R. Peña
Law Offices of Ruben R. Peña
700 Paredes Ave., Suite 103
Brownsville, Texas 78520
*Attorney for Plaintiff*

/s/ Darren G. Gibson
**DARREN G. GIBSON**
Assistant Attorney General